**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

**UNITED STATES OF AMERICA :**

**v. : CRIMINAL NO. RDB 10- 0317**

**DARNELL ANTOINE TURNER :**

**GOVERNMENT'S CONSOLIDATED RESPONSE TO DEFENDANT'S MOTIONS TO SUPPRESS EVIDENCE AND STATEMENTS**

Now Comes the United States of America, by and through its counsel Rod J. Rosenstein, United States Attorney for the District of Maryland, and John F. Purcell, Assistant United States Attorney for the District of Maryland, and respectfully submits the following response to defendant Turner's motions to suppress evidence and statements.

## I. Factual Background

The facts leading to the present indictment of the defendant, Darnell Antoine Turner, occurred on December 21, 2009, in the city of Baltimore. On that date, at about 3:30 pm., Baltimore City Detective Melvin Santiago and several other detectives were conducting neighborhood surveillance of the 1200 block of Hollins Street, an area known for drug trafficking and related firearm violence. From his vantage point, and with the aid of binoculars, Detective Santiago observed a silver 2005 model Chevrolet pickup truck (MD tag 999M590) arrive on the block. After the truck parked the Detective observed the defendant exist the passenger side of the vehicle at which time

he could be seen place what appeared to be a silver handgun into the waist area of his pants. Mr. Tuner also appeared to look around in all directions as another male entered the rear passenger side of the vehicle as Mr. Turner re-entered the front passenger side.

Believing that Turner was in possession of a handgun, Detective Santiago, who was in a vehicle with Detective Taylor and Sgt. Williams, alerted other members of their unit (Detectives Martin and Thompson, who were in a marked car) and followed the vehicle to the 1200 block of Washington Blvd., where the marked unit pulled in front of the vehicle truck as the unmarked police car, with emergency lights activated, pulled in behind. As the detectives from the rear vehicle approached with badges displayed, Turner was observed to open the front passenger door, pull the gun from his waist and drop it on the front passenger floor as he exited the front passenger seat. He then fled on foot. Sgt. Williams immediately recovered the gun (a silver .380 semi automatic) and detained the driver (Mark Griffin) and the earlier observed rear passenger (Kevin Wright). Turner was pursued by Detectives Taylor and Thompson who apprehended him about one block away at the corner of Cross and Washington. The defendant had turned onto Cross Street and was found hiding behind a dumpster next to a bar. The driver and other rear passenger were released at the scene. Neither made any statements beyond identifying themselves.

While being taken into custody, the defendant stated, “Why are you all stopping

me?" He was walked back to the vehicle and seated on a step to await transport to the district. While seated, and without being asked any questions, Turner asked "Why am I being locked up." A detective responded that it was because of the gun in the car, to which Mr. Turner responded, "That doesn't even work" and said that he was trying to "sell the .380."

Based on his several prior convictions for state felony drug trafficking crimes (in 1994, 1997, 1996 and 2004), this prosecution was referred to the U.S. Attorney's Office. On June 10, 2010, Mr. Turner was indicted by a federal grand jury for violation of 18 U.S.C. § 922 (g)(1). He has since moved to suppress evidence and his post- arrest statements.

## II. Discussion

### A. Standing: Turner Abandoned the Vehicle and the Firearm When He Fled

Those who abandon property have no standing to challenge its seizure. *Abel v. United States*, 362 US 217, 241 (1960). The government submits that Turner lacks standing to challenge the seizure of the firearm from the vehicle because he both the vehicle *and* the gun when he fled. The Fourth Amendment protects property for which an individual maintains a "subjective expectation of privacy that society recognizes as reasonable." *Kyllo v. United States*, 533 U.S. 27, 33 (2001). A person who voluntarily abandons his property "loses any reasonable expectation of privacy in the property and

is consequently precluded from seeking to suppress evidence seized from the property." *United States v. Kirlew*, 291 Fed.Appx. 536 , 538 (4th Cir. 2008) (defendant who fled from vehicle pursed by police lacked subjective expectation of privacy); *United States v. Leshuk*, 65 F.3d 1105, 1111 (4th Cir.1995). In determining whether property has been abandoned, we must consider " 'not whether all formal property rights have been relinquished, but whether the complaining party retains a reasonable expectation of privacy in the [property] alleged to be abandoned.' " *United States v. Stevenson*, 396 F.3d 538, 546 (4th Cir.2005) (*quoting United States v. Haynie*, 637 F.2d 227, 237 (4th Cir.1980)). An individual's expectation of privacy in his automobile is less than in other property, particularly when the vehicle is left in the street or another public area. *Kirlew*, 291 Fed.Appx. at 538; *United States v. Bellina*, 665 F.2d 1335, 1340-41 (4th Cir.1981). In *Kirlew*, *supra*, after being pursued by police during a dangerous high-speed chase, the defendant jumped out of the still-moving vehicle and fled on foot. During the hearing on the motion to suppress, he contended that these actions did not qualify as abandonment because he intended to flee from the police, not to relinquish all rights to the vehicle. *Id*. at 248. The Fourth Circuit, however, rejected that argument and held that abandonment may be found where a fleeing defendant "relinquishes an object to make his flight easier" and that fleeing the police did not make the abandonment of the vehicle involuntary. *Id*. at 538, quoting *United States v. Basinski*, 226 F.3d 829, 837 (7th

Cir.2000). The court also noted that while Kirlew was driving the car in question, he was not the owner of the vehicle, thus further reducing his objective expectation of privacy. *Id*., citing *United States v. Stevenson*, 396 F.3d 538, 546 (4th Cir.2005) (in making abandonment determination, "it is still relevant to consider a defendant's property interest"). Here, Turner was neither the driver nor owner of the vehicle. "Because Kirlew abandoned his vehicle, the district court did not err in denying his motion to suppress." *Kirlew,* 291 Fed.Appx. At 539.

As in *Kirlew,* Turner's actions indicated an absence of any reasonable expectation of privacy in the contents of the vehicle. *See United States v. Tate*, 821 F.2d 1328, 1330 (8th Cir.1987) (citing *United States v. Walton*, 538 F.2d 1348, 1354 (8th Cir.1976)); *United States v. Edwards*, 441 F.2d 749, 751 (5th Cir.1971).

B. Even if Turner Retains Standing, Under the Circumstances There Was Sufficient Basis for Reasonable Suspicion that a Crime Was Being Committed to Justify the Stop of the Vehicle.

As noted, Detective Martinez observed Turner in possession of the subject firearm when he exited and then re-entered the vehicle, which provided, at the very least, a sufficient basis to provide reasonable suspicion to conduct a *Terry* stop of the vehicle, if not outright probable cause. A law enforcement officer may initiate a brief investigatory stop if the officer has reasonable suspicion to believe that 'criminal activity may be afoot.' *Terry v. Ohio*, 392 U.S. 1, 30 (1968). Of course, even observation of a

minor traffic violation gives an officer probable cause to stop the driver. *United States v. Hassan El*, 5 F.3d 726, 730 (4th Cir.1993). In determining whether an officer had reasonable suspicion, courts view the totality of the circumstances to determine whether the officer had 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.' *United States v. Cortez*, 449 U.S. 411, 417-418 (1981). Although the reasonable suspicion standard 'defies precise definition,' *United States v. McCoy*, 513 F.3d 405, 411 (4th Cir.2008), it is less demanding than probable cause, *Alabama v. White*, 496 U.S. 325, 330 (1990), and falls 'considerably short of satisfying a preponderance of the evidence standard,' *United States v. Arvizu*, 534 U.S. 266, 274 (2002); *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) ( Terry's "reasonable suspicion" standard is "less demanding ... than probable cause." Reasonable suspicion requires more than a hunch but less than probable cause and may be based on the collective knowledge of officers involved in an investigation. *United States v. Hill* 252 Fed.Appx. 532, 534 (4th Cir. 2007).

Furthermore, when a police officer lawfully stops a vehicle and possesses "a reasonable belief based on 'specific and articulable facts'... that the suspect is dangerous and ... may gain immediate control of weapons," the officer may search the areas of the passenger compartment of the automobile where "a weapon may be placed or hidden." *Michigan v. Long*, 463 U.S. 1032, 1049-50 (1983) (quoting *Terry*, 392 U.S. at 21); *Hill*, 252

Fed.Appx. at 534. (Where the police officers had a reasonable belief Hill was dangerous because they had reason to believe he had removed items from a house containing numerous weapons and knew that at least one of the items taken from the house appeared to be a gun.)

In order to justify a *Terry* stop, a police officer must simply point to "specific and articulable facts which, taken together with rational inferences from those facts," *Terry*, 392 U.S. at 21, evince "more than an 'inchoate and unparticularized suspicion or hunch' of criminal activity," *Wardlow*, 528 U.S. at 124,(quoting *Terry*, 392 U.S. at 27). Thus, the quantum of proof necessary to demonstrate "reasonable suspicion" is "considerably less than [a] preponderance of the evidence." *Wardlow*, 528 U.S. at 123; *United States v. Branch*, 537 F.3d 328, 336 (4th Cir. 2008).

Second, a court must take a commonsense and contextual approach to evaluating the legality of a *Terry* stop. *Ornelas*, 517 U.S. at 695-96; *Branch*, 537 F.3d at 336; *United States v. Lender*, 985 F.2d 151, 154 (4th Cir.1993). To that end, the Supreme Court has noted that "reasonable suspicion" is a "nontechnical conception[ ] that deal[s] with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Ornelas*, 517 U.S. at 695. Thus, context matters: actions that may appear innocuous at a certain time or in a certain place may very well serve as a harbinger of criminal activity under different circumstances. And respect for the

training and expertise of police officers matters as well: it is entirely appropriate for courts to credit "the practical experience of officers who observe on a daily basis what transpires on the street." *Lender*, 985 F.2d 151, 154 (4th Cir.1993); *see also United States v. Arvizu*, 534 U.S. 266, 273 (2002). In sum, *post hoc* judicial review of police action should not serve as a platform for "unrealistic second-guessing" of law enforcement judgment calls. *United States v. Sharpe*, 470 U.S. 675, 686-88 (1985).

Third, a court's review of the facts and inferences produced by a police officer to support a *Terry* stop must be holistic. Courts must look at the "cumulative information available" to the officer, *Arvizu*, 534 U.S. at 273; *Branch*, 537 F.3d at 336, and not find a stop unjustified based merely on a "piecemeal refutation of each individual" fact and inference, *United States v. Whitehead*, 849 F.2d 849, 858 (4th Cir.1988). A set of factors, each of which was individually "quite consistent with innocent travel," could still, "taken together," produce a "reasonable suspicion" of criminal activity. *United States v. Sokolow*, 490 U.S. 1, 9,(1989). "It is the entire mosaic that counts, not single tiles." *Whitehead*, 849 F.2d at 858.

Fourth, a police officer's decision to stop and detain an individual must be evaluated objectively. *See, e.g., Wardlow*, 528 U.S. at 123; *Terry*, 392 U.S. at 21-22. Thus, the lawfulness of a Terry stop turns "not on the officer's actual state of mind at the time the challenged action was taken," *Maryland v. Macon*, 472 U.S. 463(1985), but rather on

"an objective assessment of the officer's actions," *Scott v. United States*, 436 U.S. 128, 137, (1978); *Branch* at 336. In other words, if sufficient objective evidence exists to demonstrate reasonable suspicion, a *Terry* stop is justified regardless of a police officer's subjective intent.

Here, Detective Santiago, who had a clear and unobstructed view of the defendant for his location on the next block, and who made his day-time observations of the defendant with the aid of binoculars, developed sufficient reasonable articulable suspicion to stop the vehicle in which the defendant was a passenger when he saw the defendant exit and then re-enter the vehicle with the gun. The reasonableness of the vehicle stop was enhanced by other circumstances, including that the police were in that neighborhood in the first place because it was known as area in which firearm possession and drug trafficking were rampant, and by the experience and training of these detectives, and Detective Santiago in particular, which has focused on the detection and investigation of drug and firearm crimes. In addition, the furtive behavior of the defendant when he exited the vehicle, met with Kevin Wright, and then re-entered the vehicle, drew the officers' attention and added to their reasonable belief that Turner was in possession of a firearm in possible connection with a drug trafficking crime.

Finally, once Turner was apprehended, his possession of a firearm provided

probable cause for his continued detention during the course of which he made the spontaneous statements described below. *See, e.g., United States v. Goode*, 178 Fed.Appx. 219 (4th Cir. 2006) ( Police officers had probable cause to arrest defendant upon finding firearm and drugs during valid search of vehicle conducted in course of traffic stop.)

Accordingly, the government submits that the stop of the vehicle and recovery of the firearm were lawful and that the motion to suppress evidence must be denied.

B. Turner's Post -Arrest Statements Are Admissible

1. *Turner's Statements were Spontaneous*

Because they were spontaneous and not made in response to interrogation, Turner's post-arrest admissions as to knowledge and possession of the .380 semi-automatic recovered from the vehicle are not barred by the Fifth Amendment on the ground that they were not preceded by *Miranda* warning. His statements were spontaneous and not in response to any question or action on the part of the officers. *See Rhode Island v. Innis*, 446 U.S. 291, 300 (1980)(volunteered statements are not a product of interrogation and therefore are not barred by the Fifth Amendment); *United States v. Wells*, 231 Fed.Appx. 243, 245 (4th Cir. 2007) ("assuming that Wells was in custody when he approached the officers and admitted ownership of the 28 marijuana plants growing near his home, his statements were spontaneous and not in response to any question or

action on the part of the officers.") Moreover, as *Miranda* and its progeny make plain, confessions given freely and without compelling state influences are admissible and indeed, desirable. "Volunteered statements of any kind are not barred by the Fifth Amendment...." *United States v. Kimbrough*, 477 F.3d 144,150 (4th Cir. 2007) (internal citations omitted).

2. *Turner's Post- Arrest Statements Were Also Voluntary*

It is also clear from the facts and circumstances that Turner's post-arrest statements were made freely and voluntarily and without "improper, compelling state influence." The voluntariness of a defendant's statement is based upon the trial court's consideration of "all the circumstances surrounding the giving of the confession..." 18 U.S.C. § 3501(b); *Brewer v. Williams*, 430 U.S. 387, 402 (1987). The factual inquiry as to whether, considering all the circumstances, law enforcement officers have overborne the will of the accused centers (1) on the conduct of the law enforcement officers, and (2) the suspect's capacity to resist any pressure by law enforcement. A "totality of circumstances" inquiry allows the trial court a flexible standard for determining voluntariness in light of both the characteristics of the accused and the details of the investigation. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). An accused's personal characteristics, physical condition, and experience or inexperience with the criminal justice system may also be considered. *See Rook v. Rice*, 783 F.2d 401, 404-05 (4th Cir.

1986) (confession voluntary despite defendant's low intelligence and seventh grade education and use of "good guy/bad guy tactics and *Miranda* warnings given). Morever, in a wide range of post-arrest, and even post- invocation situations, police conduct has been found to not render a statement involuntary. *See Rhode Island v. Innis*, 446 U.S. 291, 300 (1980) (statement voluntary where police transporting murder suspect who had invoked *Miranda* permissibly used "subtle coercion" to strike responsive chord" with Defendant by appealing to his concern that missing gun might be found by "poor handicapped children"); *Arizona v. Mauro*, 481 U.S. 520, 528-29 (1987)( statement voluntary and not violative of *Miranda* where officer with tape recorder sat in on meeting between Defendant and his wife during which defendant incriminated himself)*; United States v. Jones,* 66 F.3d 217 (4th Cir. 1995), 1995 WL 550229 (statement voluntary where police told defendant who had invoked *Miranda* that he was being charged with murder after which Defendant made incriminating statement)*; United States v. Haynes*, 26 Fed. Appx.123 (4th Cir. 2001), 2001 Wl 1459701 (post- invocation statement held to be made voluntarily when preceded by police conduct that included - placing Defendant alone for over an hour in staged room; showing pictures/articles about victims and crime; confronting him with plea of co-defendant; showing evidence; showing fabricated ballistic report; and asking if he was "ready" to talk.)

Here, there has neither been a suggestion, nor any evidence presented upon

which the court could conclude that Turner's post-arrest admissions were involuntary or the product of coercion that overbore his will.

**Conclusion**

The government respectfully submits that the defendant's motions to suppress evidence and statements must be denied.

Respectfully submitted,

Rod J. Rosenstein
United States Attorney

By:____________________________

John F. Purcell
Assistant United States Attorney
36 South Charles Street
Fourth Floor
Baltimore, Maryland 21201
(410) 209-4800

**CERTIFICATE OF ELECTRONIC FILING**

I hereby certify that on this 22nd day of September, 2010, a copy of the Government's Supplemental Response to the Defendant's Motions to Suppress Evidence and Statements was electronically filed with the Clerk of the U.S. District Court in Baltimore, MD, and that electronic copies were sent to Assistant Federal Defender Joseph Balter, counsel for Mr. Turner.

_______//__________
John F. Purcell, Jr.